# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  No. 2:15-CR-60 |
| | ) |
| RALPHAEL CASSIBERRY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Suppress and Quash Arrest, filed by Defendant, Ralphael Cassiberry, on April 22, 2016. (DE #39). For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

Defendant, Ralphael Cassiberry ("Cassiberry"), is charged with identity theft in violation of 18 U.S.C. section 1028(a)(7) and committing a crime while on release in violation of 18 U.S.C. section 3147. Cassiberry has moved to quash his arrest and suppress all evidence obtained in the search and seizure of his person on or about May 16, 2015, claiming violations of his Fourth and Fifth Amendment rights. In his motion, Cassiberry claims that the officer lacked reasonable suspicion to believe Cassiberry's wallet contained contraband or evidence of a crime, and that "the

quantum of facts did not amount to probable cause to believe the Defendant had committed, was committing, or was about to commit a crime." (DE #39 at 4).

This Court held an evidentiary hearing on this matter on May 17, 2016, at which Officer Kenneth Williams ("Officer Williams"), an officer with the Hobart Police Department, testified. Agent Clint Yarges of the United States Secret Service also testified. At the conclusion of the hearing, the Court took the instant motion under advisement.

FINDINGS OF FACT

In making the following findings of fact, the Court has considered the briefs of the parties, the evidence presented, and the credibility of the witnesses. Therefore, the Court finds as follows:

On May 16, 2015, Officer Williams was working in Jasper County, Indiana. He was on I-65 when he saw a black, Chrysler 300 following too closely behind a semi-truck. He initiated a traffic stop and, after the vehicle pulled over, approached the vehicle on the passenger's side. He found the passenger, later identified as Cassiberry, asleep and woke him up. Officer Williams immediately detected an odor of burnt marijuana. Officer Williams was told that the car was rented and asked the driver if he had the rental agreement. Cassiberry, however, answered. Cassiberry indicated

that they did not have the rental agreement. Officer Williams, knowing that rentals are typically short-term and require that the rental agreement be in the car, thought it was odd that they were not looking for the rental agreement and that they did not have it. Officer Williams asked Cassiberry if he rented the vehicle, and he indicated that he had rented it. He then asked to see Cassiberry's identification. When Cassiberry opened his wallet, Officer Williams saw that he had a military ID and several credit cards. At this point, Officer Williams was not suspicious of the credit cards. He inquired about firearms, however, because he saw the military ID and, in his experience, many people who have served in the military carry guns in Indiana.

Officer Williams then asked the driver, Jamal Campbell ("Campbell"), to come back towards his car with him. Officer Williams explained the reason for the stop (following too closely) and indicated that, if Campbell's license was not expired, he would give him a written warning. Campbell did not deny that he was following too closely but did attempt to explain his actions. Officer Williams asked Campbell where he was coming from. He indicated he was coming from Cincinnati. He also asked him about the smell of marijuana. Campbell initially denied that both he and Cassiberry smoked marijuana, but then he indicated that marijuana had been smoked in the vehicle earlier. He further clarified that by earlier he meant the previous night. While Campbell did not

clearly state that he smoked the marijuana personally, it can reasonably be inferred from his statement that either he, or he and Cassiberry, had smoked marijuana in the vehicle the previous evening. He denied that there was marijuana in the car.

Campbell then clarified that they left from Chicago early that morning. Officer Williams had already run Campbell's license and knew he had a warrant out of Louisiana for fraud. Campbell, however, claimed that he had not yet been charged with a crime, but that he had a court date on the 25th of June. At this point, Officer Williams felt Campbell was being deceptive because he would not have either a warrant or a court date if he had not yet been charged. Furthermore, when he asked Campbell what the original charge was, he just stated that he had a warrant. During this conversation with Campbell, Officer Williams witnessed Cassiberry reaching around the front portion of the vehicle.

Officer William decided to search the vehicle. At this point, Officer Ciesielski had arrived to assist. Officer Williams approached the passenger side again and asked Cassiberry to step out, explaining that the car smelled like marijuana. Cassiberry denied that the car smelled like marijuana but complied with Officer Williams' request that he exit the vehicle. Cassiberry sat in the police vehicle while the car was searched.

Officer Williams retrieved his canine and took him around the vehicle. Officer Williams was not relying on the canine to

establish probable cause for the search; rather, it was a new dog, and they were having issues with him on the highway, especially when working on the street side of a vehicle. This was an opportunity to give the dog exposure in a real life scenario. He was, however, a trained canine, and he did alert to the presence of narcotics.

During the search, Officer Ciesielski located a small bag of what appeared to be marijuana in the driver's door area - the same area where Cassiberry was seen reaching while Officer Williams was discussing the traffic violation with Campbell. Officer Williams testified, after reviewing one of his reports, that Campbell told him that the marijuana was his.

The search also revealed numerous gift cards in a black luggage bag in the trunk. Those cards were run though a magnetic card reader, and they were determined to be legitimate, meaning that the numbers on the front of the cards matched the numbers encoded on the magnetic strip. Officer Williams knew from his experience that people who engage in credit card fraud buy gift cards with the fraudulent credit cards because they can then be used as cash instead of using the fraudulent card. Campbell claimed that these gift cards were from his mom.

The search also revealed a wallet tucked up under the passenger's seat. This wallet contained cards with the driver's name on them. These cards were run through the magnetic card

reader too, and it was determined that they were fraudulent - the numbers on the front of the cards did not match the numbers encoded in the magnetic strips on the back of the cards.

Officer Williams initially testified that he first searched Cassiberry's wallet after he was placed in handcuffs. Later in the hearing, however, it became clear from video taken from the interior of Officer Williams' vehicle that he actually looked through the wallet prior to Cassiberry being handcuffed. Cassiberry was removed briefly from the squad car, and the officer patted him down searching for marijuana. No marijuana was found. He also took Cassiberry's wallet and looked through it for several seconds before returning it.

Shortly thereafter, both Campbell and Cassiberry were placed under arrest. It was only after Cassiberry's arrest that the cards located in Cassiberry's wallet were run through the magnetic strip reader. Following Cassiberry's arrest, it was determined that some of the cards in his wallet were fraudulent.

CONCLUSIONS OF LAW

The Fourth Amendment protects persons from unreasonable searches and seizures, and this protection has been extended to the states through the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); U.S. Const. Amend. IV. The Fourth Amendment prohibits a warrantless search,

unless the search falls under one of the recognized exceptions to the warrant requirement. *U.S. v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). If a search is conducted without a warrant, the Government bears the burden of proving by a preponderance of the evidence that an exception to the warrant requirement existed at the time of the search. *United States v. Taylor*, 776 F.3d 513, 518 (7th Cir. 2015). Ultimately, the Fourth Amendment's touchstone is reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). This Court has considered the evidence, the briefs, and the oral arguments of counsel and finds no violation of Cassiberry's Fourth Amendment rights.[1]

The Initial Traffic Stop

Cassiberry's motion to suppress does not dispute that the original traffic stop, premised on the fact that the vehicle was following too closely, was lawful. At the hearing, Cassiberry attempted to elicit evidence that might suggest the initial stop was unwarranted, but this Court sustained the Government's objection on the basis that it was outside the scope of the motion

---

[1] Cassiberry's motion also claims a violation of the Fifth Amendment of the United States Constitution. The Fifth Amendment guarantees that no person "be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. AMEND. V. The Fifth Amendment "[p]rotects a person only against being incriminated by his own compelled testimonial communications." *Doe v. U.S.*, 487 U.S. 201, 207 (1988). When an individual is taken into custody and is subject to interrogation, the individual must be advised of these rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). Cassiberry has not developed any arguments in support of a Fifth Amendment violation in either his brief or at the hearing on the motion to suppress.

to suppress.[2]

Cassiberry's Detention Prior to Arrest

This Court does not believe that Cassiberry's motion to suppress can be fairly construed as a challenge to the lawfulness of his detention prior to his arrest. At the hearing, however, there was some attempt to broaden the scope of the motion. The Government objected to inquiries by Cassiberry's counsel that challenged the lawfulness of Cassiberry's temporary detention, and that objection was sustained. Nonetheless, the lawfulness of Cassiberry's detention will be addressed briefly. The Supreme Court has made it clear that "[a] seizure justified *only* by a police-observed traffic violation . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (emphasis added) (internal brackets and quotation marks deleted). However, "when

---

[2] Probable cause to initiate a traffic stop exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000). "Ulterior motives do not invalidate a police stop for a traffic violation, no matter how minor, if a motor vehicle law infraction is detected." *United States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996); *United States v. Tipton*, 3 F.3d 1119, 1122 (7th Cir. 1993); *see Whren v. United States*, 517 U.S. 806, 810 (1996)(holding that the "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). The evidence before this Court shows that, when Cassiberry was told the reason for the stop, he did not deny that he was driving too closely but instead attempted to explain his behavior. Even if not waived, any argument that the initial traffic stop was without probable cause would almost certainly fail.

there is reasonable suspicion that the occupants of a vehicle are engaged in other illegal activity, an officer may prolong a traffic stop to investigate that activity." *United States v. Walden*, 146 F.3d 487, 490 (7th Cir. 1998).

Here, Officer Williams observed the smell of marijuana immediately upon approaching the vehicle. Based on the odor of marijuana emitting from the vehicle, even when the reason for the initial stop was resolved, Officer Williams had reasonable suspicion to believe one or both of the vehicle's occupants may have possessed marijuana. This justified an extension of the traffic stop and Cassiberry's continued detention.

The Search of the Vehicle

It does not appear that Cassiberry is challenging the search of the vehicle, but in the interest of thoroughness this Court will briefly address that search. Officers may search an automobile without a warrant if they have probable cause to believe it contains contraband. *Arizona v. Gant*, 129 S.Ct. 1710, 1721 (2009)("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-21, 102 S.Ct. 2057, 72 L.Ed.2d. 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be found."). The smell of marijuana alone provided probable cause to believe the vehicle contained contraband. *See United States v. Franklin*, 547

F.3d 726 (7th Cir. 2008)("A police officer who smells marijuana coming from a car has probable cause to search that car."); *United States v. Mosby*, 541 F.3d 764, 768 (7th Cir. 2008) ("smell [of marijuana] alone was enough to give rise to probable cause to search the entire vehicle, including closed container like the garbage bag."). Thus, the search of the vehicle was supported by probable cause.

The Search of Cassiberry's Wallet Prior to His Arrest

At the hearing it became apparent that Officer Williams requested Cassiberry's wallet and looked through it carefully before arresting him. By the time Officer Williams examined Cassiberry's wallet, Officer Williams had noted that Cassiberry had numerous cards in his wallet, smelled marijuana in the car, and heard Campbell both deny that either he or Cassiberry had smoked marijuana and then concede that marijuana had been smoked in the car. Additionally, Officer Williams had located marijuana in the vehicle that Campbell said was his, had located gift cards that Campbell said his mother gave him, and had located fraudulent credit cards in Campbell's wallet. Officer Williams was not required to accept Campbell's statements that the gift cards were his at face value given that he had lied twice. Based on these facts, there was probable cause to believe that one or both of the occupants of the vehicle were involved in credit card fraud, and

the search of Cassiberry's wallet was therefore supported by probable cause.[3]  In fact, at this point, this Court believes Officer Williams had sufficient probable cause to arrest Cassiberry, as is explained below.[4]

Cassiberry's Arrest

Cassiberry further contends that his arrest was unlawful because there was not sufficient probable cause to believe that Cassiberry had committed, was committing, or was about to commit a crime.  The Government, on the other hand, argues that Officer Williams had more than sufficient probable cause to arrest Cassiberry and, in fact, had probable cause to arrest him well before he was actually arrested.  The Court agrees with the Government.

A suspect may be arrested without a warrant only if the officer has probable cause to believe that the suspect has committed a crime. *United States v. Sawyer*, 224 F.3d 675, 678 (7th Cir. 2000); *United States v. Rucker*, 138 F.3d 697, 700 (7th Cir.

---

[3] It does not appear that Officer Williams' brief look inside Cassiberry's wallet meaningfully contributed to the decision to arrest him.  Officer Williams already knew the wallet contained credit cards.  At the hearing on the motion to suppress, the Government indicated that they were not attempting to admit any evidence from this search of the wallet, rather, they intended to admit evidence of what the later post-arrest search of the wallet revealed.

[4] To the extent that Cassiberry's argument that he was arrested for his mere presence in the vehicle apply to the search of his wallet prior to his arrest, that argument fails for the reasons set forth in the following section.

1998). Probable cause to make an arrest is present when "the facts and circumstances within the officer's knowledge and of which the officer has reasonable trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *Sawyer*, 224 F.3d at 678-79. Probable cause is to be determined by an analysis of the totality of the circumstances. *Rucker,* 138 F.3d at 700. Probable cause "does not require evidence sufficient to support a conviction, nor evidence demonstrating that it is more likely than not that the suspect committed a crime." *Sawyer*, 224 F.3d at 679. "So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *Id.*

As a result of the search of the vehicle, a small bag of what appeared to be marijuana was found. After the marijuana was found, a large number gift cards were located in the trunk. And, Campbell's wallet was retrieved from the vehicle. The officers scanned credit cards from Campbell's wallet and determined that they were fraudulent.[5] Cassiberry argues that the only evidence

---

[5] Although Cassiberry suggests that the scanning of the cards was a separate search and was unjustified, his cards were not scanned until after his arrest. Furthermore, Cassiberry does not develop this argument or cite any supporting authority. The Sixth Circuit, in a well-reasoned opinion, has found that scanning cards obtained through an otherwise lawful search did not violate a defendant's constitutional rights because it was not a separate search and the cardholder did not have a reasonable expectation of privacy in such information. *United States v. Bah*, 794 F.3d 617, 629-30 (July 24, 2015).

of criminal activity at the time of his arrest was associated with Campbell, and that he was just a passenger who was arrested for his mere association with Campbell. Cassiberry relies on *United States v. Di Re*, 332 U.S. 581 (1948), in support of his argument. In *Di Re*, the Supreme Court held that probable cause to search a car does not extend to a search of each of the car's occupants. *Id*. at 587 ("We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled."). In *Di Re*, a vehicle was approached based on information from an informant that the informant planned to buy counterfeit ration coupons from the driver of the vehicle. *Id.* at 583. The informant was found holding the counterfeit coupons and, when questioned, indicated that he obtained them from the driver. *Id.* The informant did not implicate the passenger, yet the passenger was also arrested. *Id.* Following his arrest, a search revealed that he too had possession of counterfeit ration coupons. *Id.* The Supreme Court found that, under these particular circumstances, an inference of conspiracy was unwarranted. *Id.* at 228.

> The argument that one who "accompanies a criminal to a crime rendezvous" cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. If Di Re had witnessed the passing of papers from hand to hand, it

> would not follow that he knew they were ration coupons, and if he saw that they were ration coupons, it would not follow that he would know them to be counterfeit. Indeed it appeared at the trial to require an expert to establish that fact. Presumptions of guilt are not lightly to be indulged from mere meetings.

*Id.*

The Government, on the other hand, points to *Maryland v. Pringle,* 124 S.Ct. 795 (2003), where the Supreme Court distinguished *Di Re* and held that, under the facts before it, the officer could reasonably infer a common enterprise among the three occupants of the car. *Id.* at 373. In *Pringle*, an officer stopped a vehicle for speeding at 3:16 in the morning. *Id.* at 386. When the driver opened the glove compartment to get his vehicle registration, the officer saw a large amount of rolled-up money. *Id.* Upon obtaining consent from the driver, the vehicle was searched and cocaine was located behind the back-seat armrest. *Id.* The occupants of the vehicle were each questioned but all denied ownership of both the money and the cocaine. *Id.* at 368-69. The officer placed all three occupants of the vehicle under arrest. The Supreme Court noted that,

> We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer would conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

*Id.* at 372. In concluding that the arrest was supported by

probable cause, the Supreme Court quoted its earlier decision in *Wyoming v. Houghton*, 526 U.S. 2985 (1999), where the Supreme Court noted that passengers "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits of the evidence of their wrongdoing." *Id.*

The facts of the instant case fall somewhere between *Di Re* and *Pringle*. Unlike *Pringle*, this is not a circumstance where the occupants both denied that the contraband belonged to them; Campbell claimed ownership of both the marijuana and the gift cards found in the trunk of the car. But, Cassiberry is not positioned precisely like the passenger in *Di Re* either. Here, several facts other than Cassiberry's mere presence in the vehicle suggest involvement in criminal activity, including but not limited to the failure to produce a rental agreement, the furtive movements, and the presence of numerous credit cards in his wallet.

The Seventh Circuit Court of Appeals recently addressed the interplay between *Di Re* and *Pringle* in *United States v. Gary*, 790 F.3d 704 (2015). In *Gary*, a vehicle was pulled over at the direction of a narcotics detective investigating a drug trafficking organization. *Id.* at 706. A pat-down search revealed heroin on the driver, but nothing on Gary. *Id.* Gary was, however, taken to the station because his parole officer wanted to see him, which amounted to an arrest. *Id.* After noting that the question of whether there is probable cause is an objective determination that is separate from the officer's enunciated reason, the court found

that there was in fact probable cause to arrest Gary. *Id.* Earlier that day, the narcotics detective who directed the stop purchased heroin from the driver while Gary was present in the car, and the driver made no effort to conceal his illegal activities from Gary. *Id.* at 706-07. Based on these facts, the court found that it was reasonable to infer a common enterprise between the driver and Gary. *Id.* at 707. Relying on *Pringle*, the court noted that the holding in *Pringle* that passengers will often be engaged in common criminal enterprises with the driver is "particularly true when the driver is engaged in drug dealing," where allowing an innocent person to have knowledge of the illegal activity would put the individual at greater risk of arrest. *Id.* The court noted that:

> In contrast to *Di Re*, where the passenger would not necessarily have known about the illegal nature of the contraband the driver was selling (counterfeit ration coupons) and had not been present when the driver sold the contraband, the illegality of the driver's conduct here was apparent. The sale of heroin is unmistakably illegal, and Gary was very close by when the driver sold heroin to an undercover agent. It is hard to imagine that the driver would have made no attempt to hide this from Gary unless he was involved in the drug-dealing enterprise.

*Id.*

After consideration of *Di Re*, *Pringle*, and *Gary*, this Court concludes that the facts of this case are more akin to *Pringle* than *Di Re*. Like in *Pringle*, Cassiberry was not arrested for his mere presence in the vehicle. Many factors would allow an experienced officer to infer that it was at least as probable that Cassiberry

was engaged in illegal conduct as any innocent inference. *See United States v. Funches*, 327 F.3d 582, 587 (7th Cir. 2003)(finding, based on the totality of the circumstances, that "the inference of illegal conduct by trained and experienced officers is at least as probable as any innocent inference."). First, Officer Williams immediately smelled marijuana upon approaching the car. Cassiberry indicated that he, the passenger, rented the car but stated that he did not have the rental agreement. The officer observed numerous credit cards in Cassiberry's wallet when he retrieved his identification. Campbell offered evasive and deceptive answers to some of Officer Williams' questions about the nature of his travels. Officer Williams witnessed furtive movements by Cassiberry in the front seat of the vehicle while he was talking with Campbell about the traffic violation. Officer Williams had knowledge that Campbell had a warrant for fraud. Campbell initially denied that either he or Cassiberry smoked marijuana, but then upon only slight prodding, offered a somewhat ambiguous admission that marijuana was smoked in the car. He then denied that there was any marijuana in the car, but a search turned up a substance that appeared to be marijuana. Campbell claimed responsibility for the marijuana, but at that point, Campbell had already lied twice - telling the officer that he did not smoke marijuana and telling the officer that there was no marijuana in the car. Numerous gift cards were found, and Campbell claimed these belonged to him, but again, Campbell had

already lied and his credibility was therefore questionable. Then, Campbell's wallet was found, and the credit cards within it turned out to be fraudulent.

This Court must look at the totality of the circumstances. *Rucker,* 138 F.3d at 700. The fact that Campbell was evasive about his trip, had been caught lying, and claimed responsibility for both the marijuana and the gift cards are relevant to determining if the officer had probable cause to arrest Cassiberry. However, even if this Court focused only on Cassiberry's actions, there were enough facts to support probable cause for Cassiberry's arrest: the smell of marijuana, the fact that he claimed he rented the car but did not have the rental agreement, the furtive movements which would make it possible that he placed the marijuana where it was found in the driver's door, and the fact that the officer had witnessed many credit cards in Cassiberry's wallet. Campbell did claim responsibility for the contraband, but, as noted above, Campbell had lied twice, and Officer Williams had no obligation to accept Campbell's claims of responsibility for the contraband as true, especially where he had seen many credit cards in Cassiberry's wallet. Cassiberry's argument that this is a mere-presence case would require the officer to have accepted Campbell's statements regarding the ownership of the contraband at face value. It would also require this Court to ignore other suspicious behaviors that suggested joint involvement in criminal activity. Here, like in *Pringle*, the totality of the circumstances support a

finding that probable cause existed to arrest Cassiberry.[6]

The Search of Cassiberry's Wallet Following Arrest

To the extent Cassiberry is challenging the search of his wallet after his arrest, this Court has determined that the arrest was lawful. As such, the search of the wallet subsequent to the arrest was also lawful as a search incident to the lawful arrest. *United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004)("[I]t is reasonable for the police to search the body, clothing, and immediate possessions of anyone in custody following an arrest on probable cause.")

CONCLUSION

The evidence before this Court shows that, at every stage, the search, seizure and arrest of Cassiberry was lawful. For the reasons set forth above, Cassiberry's Fourth Amendment rights were not violated and Defendant's Motion to Suppress and Quash Arrest, filed on April 22, 2016 (DE #39) is **DENIED.**

**DATED: May 31, 2016**                    /s/ RUDY LOZANO, Judge
                                           **United States District Court**

---

[6] At the hearing on the motion to suppress, counsel for Cassiberry suggested that the fact that Cassiberry and Campbell have been charged in different cases was relevant to determining whether this is a mere-presence case like *Di Re* or a case like *Pringle* where the likelihood of joint criminal activity supported probable cause. The fact that the Government decided to charge Cassiberry with identity theft in violation of 18 U.S.C. section 1028(a)(7) and committing a crime while on release in violation of 18 U.S.C. section 3147 rather than a crime such as conspiracy or aiding and abetting is irrelevant. The prosecutor's charging decisions have nothing to do with whether the officer at the scene had probable cause to believe a crime was afoot at the time of Cassiberry's arrest.